# Taylor's Appeal.

1. Taylor lent money to Schuon and took two mortgages, one for $3000, which was a first lien, the other for $10,000, prior to which was a mechanic's lien ; the aggregate was $656, more than the amount advanced by Taylor : the land was sold by the sheriff subject to the $3000. In distributing the proceeds, creditors alleged the $656 were usurious and should be deducted from the $10,000. *Held,* that Taylor having advanced more than $10,000, he was entitled to receive the whole amount due on that mortgage.

2. A creditor having two securities for the same debt may avail himself of either until he has received his whole legal claim.

3. The court below in distribution apportioned the $656 between the two mortgages ; *Held* to be error.

March 23d 1876. Before AGNEW, C. J., SHARSWOOD, MERCUR, GORDON, PAXSON and WOODWARD, JJ.

Appeal from the Court of Common Pleas of *Lehigh county* : Of January Term 1875, No. 158.

In the distribution of the proceeds of the sheriff's sale of the real estate of Herman Schuon.

On the 7th of January 1875, the sheriff paid into court as the

[Taylor's Appeal.]

proceeds of the sale, the sum $19,044.62. On the next day Charles M. Runk, Esq., was appointed auditor to report distribution.

The real estate sold consisted of two lots referred to in the proceedings as No. 1 and No. 2 ; No. 1 was sold subject to a mortgage of $3000 which will be referred to hereafter.

The facts as reported by the auditor are in substance as follows :—

Schuon in 1874 being largely indebted and executions pressing him, applied to William H. Taylor, who agreed to lend him $10,000, for which he was to have as security a first mortgage on No. 2, the money to be applied by Taylor to the payment of the liens on No. 2. The mortgage was executed and it was afterwards ascertained that $10,000 would not be sufficient to pay all the liens. An arrangement was then made that Taylor should take an assignment of the $3000 mortgage, which was held by a bank as collateral security, and advance enough to discharge the liens against Schuon ; this being completed, Taylor recorded his $10,000 mortgage. The whole amount advanced by him was $12,643.56; for this he held as security the two mortgages amounting together to $13,000. Previously to the recording of the $10,000 mortgage repairs had been done to the building on No. 2 and the mechanic's lien for them was entered afterwards. In consequence, this mortgage did not become a first lien as was designed, and it was discharged by the sheriff's sale; Taylor, therefore, had to come upon the fund in court, which was sufficient to pay the $10,000 mortgage and subsequent liens in full, except a judgment in favor of B. C. Roth, for $1750, entered November 27th 1874.

Before the auditor, Taylor claimed that $656.44, the difference between the money advanced by him and the amount of the two mortgages, had been allowed to him by Schuon under a contract, for his services in procuring the money for him. The subsequent lien creditors claimed that the sum of $656.44 was usurious interest and therefore should be deducted from the amount to which Taylor would apparently be entitled and be appropriated for their benefit.

The auditor reported : * * *

"It seems clear that Mr. Taylor did perform services for which he would be entitled to compensation if he were not the lender of the money. The fact that he is the lender should not deprive him of his right to compensation, if his services were not the mere pretext to evade the law against usury.

"The view we take of the case relieves us from deciding whether Mr. Taylor is entitled to retain the $656.44 as compensation for services, or not. Under the arrangement for the $10,000 loan, that money was to be applied in discharge of liens upon the property to be covered by the mortgage to secure that loan. After this mortgage had been executed, recorded and part of the money paid out by Taylor, it was found that $10,000 would not reach,

and Taylor says he refused to furnish more money without being secured. It was then agreed that Taylor should receive an assignment of a $3000 mortgage, known as the Eagan mortgage, covering No. 1, of defendant's real estate. An assignment of this mortgage was executed August 22d 1874 * * * Mr. Schuon and Mr. Taylor seem to regard it as security for the money advanced by Mr. Taylor above the $10,000. As that mortgage ($3000) is not discharged by the sheriff's sale, neither its validity, nor the sum due upon it, is in question before me. In compliance with his engagement to lend $10,000, Mr. Taylor furnished more than that sum, which was applied in discharge of the liens on the property to be covered by his mortgage. * * *

" Mr. Taylor has, therefore, in the judgment of the undersigned, furnished the full sum secured by the $10,000 mortgage, and is entitled to be paid that sum out of the money in court with interest thereon from August 11th 1874, to April 12th 1875, the date of sheriff's sale. This has been allowed him in the distribution." * * *

He therefore awarded to Taylor $10,400, the amount of principal and interest due on his mortgage, and to Roth, the last lien creditor, $434.88, leaving still due to him the sum of $1356.42.

Roth filed exceptions to the report of the auditor, viz. :—

1. Awarding to Taylor the full amount of his mortgage and interest.

2. Allowing him $656.44, the amount retained from the $10,000 lent to Schuon.

4. Allowing Taylor usurious interest on his mortgage.

In his opinion on the exceptions, Longaker, P. J., amongst other things, said :—

" * * * The property upon which the Eagan ($3000) mortgage rests has been sold subject to this mortgage; and the $10,000 mortgage has been discharged, from the fact that a mechanic's lien was filed subsequently to its entry. It is therefore contended by counsel for Mr. Taylor, that the $656.44 retained by him—if found to be a bonus—will attach itself to the Eagan mortgage; and as that mortgage is not discharged, the court can institute no inquiry as regards its legal status. * * *

" An examination of the testimony warrants the conclusion, that this sum was retained as a bonus, and it must therefore be treated as usurious interest attaching itself to the entire transaction; and a proper equitable disposition will be a pro rata distribution of the $656.44 upon the sum of $12,343.56. * * * The pro rata distribution will be about 531-1000, which on $10,000 will be $531; this latter sum will therefore be deducted from the distribution allowed Mr. Taylor, and added to the claim of B. C. Roth.

" And now, 14th January A. D. 1876, it is decreed that the report be modified by reducing the allowance to Taylor on his

[Taylor's Appeal.]

mortgage to the sum of $9869, and increasing the distribution to B. C. Roth on his judgment of $1750 to the sum of $965.88."

Taylor appealed to the Supreme Court and assigned this decree for error.

*E. Harvey*, for appellant.

*W. H. Sowden*, for appellee.

Mr. Justice SHARSWOOD delivered the opinion of the court, May 8th 1876.

Conceding all that can be asked, that the advances by Taylor to Schuon constituted one debt, for which two several mortgages were taken as securities, and that the sum of $656.44, the difference between the amount of these two mortgages and the sum actually advanced, was usurious, it is not easy to comprehend upon what principle of law or equity the usury is to be apportioned between these two mortgages. The opinion of the learned judge below does not enlighten us. A creditor who has several securities for the same debt, has a right to avail himself of any one of them, until he has realized his whole legal claim, principal and interest. If Taylor had sued out the $10,000 mortgage, he would have been entitled to a judgment for the whole amount, principal and interest, for after receiving it, there would still have been a balance due him, for which he must look to his other security. That other security he may never realize or not in full. If both mortgages had been turned into money, and it was thus legally ascertained that there was more than enough to pay Taylor his debt in full with legal interest, there might then have arisen a question of marshalling the assets, there being two separate funds. Here there was but one fund in court, upon which the $10,000 mortgage stood as an undoubted lien, and the Eagan mortgage not a lien. It seems to us that there was error in the decree of the court below.

> Decree reversed, and now record remitted that distribution may be decreed according to the report of the commissioner.